Billy SMITH, Plaintiff,

v.

**ALABAMA DEP'T OF PUB. SAFETY, Defendant.**

No. CIV.A.98–D–340–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 20, 1999.

Procedure and 28 U.S.C.A. § 1927. JRI must ˙ file a separate motion for such.

1216

Marvin W. Wiggins, April A. England, Selma, AL, for Plaintiff.

William G. McKnight, Dept. of Public Safety, Legal Unit, Montgomery, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant's Motion For Summary Judgment ("Def.'s Mot."), along with its Brief In Support Of Motion For Summary Judgment ("Def.'s Br.") and Evidentiary Submission, filed on June 14, 1999. On July 13, 1999, Plaintiff filed a Brief In Opposition To The Defendant's Motion For Summary Judgment, which the court construes as a Response ("Pl.'s Resp."), along with his Evidentiary Submission In Opposition To Defendant's Motion For Summary Judgment. Defendant filed a Reply Brief In Support Of Summary Judgment Motion ("Def.'s Reply") on July 20, 1999. On August 19, 1999, Plaintiff filed his Supplemental Response To The Defendant's Motion For Summary Judgment ("Pl.'s Supp. Resp."). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's Motion is due to be granted.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 2201, 2202, and 42 U.S.C. § 2000e, et seq. The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## FACTUAL BACKGROUND

Plaintiff Billy Smith, an African–American male, began working as a State Trooper with Defendant Alabama Department of Public Safety ("DPS") in March of 1975. (Compl. at 3.) Although Plaintiff worked at various DPS locations throughout the State, he moved to Selma, Alabama in 1983

and has lived there since that time. (Smith Dep. at 12–18.) In February of 1988, Plaintiff was assigned to the Selma Driver's Licence Office where he served as a Corporal for eight years. (*Id.* at 17–18.) As part of a statewide departmental reorganization and effort to eliminate supervisory positions in local units ("departmental reorganization"), Plaintiff and his supervisor, Lieutenant Virgil Spain, were transferred to Montgomery in November of 1995. (Pl.'s Resp. at 3; Smith Dep. at 29.) At this point, the Selma District of the DPS was dissolved and incorporated into the Montgomery District. (Pl.'s Resp. at 3.)

After the transfer, Plaintiff was allowed to continue living in Selma, and Defendant provided him with a state car for the commute to his new position in Montgomery. (Smith Dep. at 103–04.) Additionally, Plaintiff did not lose any pay, rank, or benefit as a result of the transfer. (Shoemaker Dep. at 20–21.) However, Plaintiff neither received, nor was he eligible to receive, a promotion at the time of his transfer. (Smith Dep. at 78–79; Speight Aff. at 2–3.) In short, Plaintiff's transfer to Montgomery was a lateral one. (Shoemaker Dep. at 20–21.)

Upon his arrival in Montgomery, Plaintiff started training under Sergeant Curtis Luther, the Chief Review Officer for DPS, to become Sergeant Luther's successor. (Smith Dep. at 19–20; Shoemaker Dep. at 28.) Sergeant Luther subsequently retired and when Plaintiff became eligible for promotion to Sergeant, he was appointed to fill Sergeant Luther's position. (Shoemaker Dep. at 22.) However, despite the success that Plaintiff enjoyed in Montgomery, he always wanted to return to his position in Selma. (Smith Dep. at 37.) Therefore, when Defendant re-established the Selma Assistant Post Commander Position ("Selma position") in December of 1995, Plaintiff quickly applied for the job. (Smith Dep. at 72; Pl.Ex. 3.)

The Selma position was re-established after Defendant recognized that there was still a need for a supervisory officer back at the Selma Post once the departmental reorganization had been completed. (Shoemaker Dep. at 24–26; Def.'s Reply at 4.) This new position involved many of the same duties that Plaintiff had previously performed while working in Selma and the pay, rank, and benefits were identical to what Plaintiff had received in his previous Selma job. (Shoemaker Dep. at 25–26.) However, the Selma position was not exactly the same as Plaintiff's previous position in Selma because it was now supervised out of the Montgomery Post due to the departmental reorganization. (*Id.*) Although the Selma position would have been a lateral move rather than a promotion for Plaintiff, it would have allowed Plaintiff to work closer to his home. (Shoemaker Dep. at 25–26.)

In January of 1996, Plaintiff, along with Corporal Terry Chapman and Corporal Kevin Claunch, both of whom are Caucasian, applied for the Selma position. (Def.'s Ex. 15.) Corporal Chapman, who held the same classification as Plaintiff, was eventually selected for the job. (Shoemaker Dep. at 26.) Although Corporal Chapman met the qualifications for the Selma position, Plaintiff felt that he was more qualified than Corporal Chapman for the job. (Pl.'s Resp. at 3.)

After Plaintiff was denied the Selma position, he filed an employee departmental grievance alleging racial discrimination. (Compl. at 3.) In this grievance, Plaintiff stated that "[t]here are other collateral matters relative to this incident that I will address in the near future." (Pl.'s Ex. G) However, when ordered by his supervisor, Captain Roscoe Howell, to disclose the information regarding the "other collateral matters," Plaintiff refused to do so. (*Id.*) After Plaintiff repeatedly refused to cooperate with the investigation of his employee grievance, Colonel Gene Mitchell, then director of DPS, reprimanded Plaintiff for failing to obey a lawful order by a superior officer. (*Id.*) This reprimand was issued on March 11, 1996. (*Id.*)

On June 3, 1996, Plaintiff filed a complaint with the Equal Employment Oppor-

tunity Commission ("EEOC") regarding both his transfer from Selma to Montgomery and the denial of his application for the Selma position. (Def.'s Ex. 27.) Subsequent to filing his EEOC complaint, Plaintiff received "meets standards" evaluations from his supervisors, as opposed to the "exceeds standards" evaluations that he had consistently received before. (Pl.'s Resp. at 12.) On December 17,1997, Plaintiff filed an amended EEOC complaint alleging retaliation charges against Defendant. (Def.'s Ex. 28.)

In January of 1998, Plaintiff was promoted to Sergeant and appointed Chief Review Hearing for all hearing officers in the state. (Smith Dep. at 78.) Plaintiff was awarded this promotion four months after becoming eligible for the rank of Sergeant and was chosen over nine white applicants for this position, which he currently holds. (Speight Aff. at 2–3.) Subsequent to Plaintiff's promotion, two separate Sergeant positions became available at the Selma Post. (Def.'s Br. at 11.) Plaintiff did not apply for either position. (Smith Dep. at 80–99.)

Plaintiff commenced the above-styled action by filing a Complaint on March 20, 1998, wherein Plaintiff alleges the following: (1) disparate treatment (Count II); (2) retaliation (Count I); (3) pattern and practice of discrimination (Count III); (4) wantonness and willfulness (Count IV); and (5) attorneys' fees (Count V). (Compl. at 4–6.) On June 14, 1999, Defendant filed its Motion For Summary Judgment on all of Plaintiff's claims.

## DISCUSSION

### I. Disparate Treatment

Plaintiff contends that Defendant discriminated against him on the basis of race in its employment decisions contrary to the mandates of Title VII of the Civil Rights Act of 1964 and 1991, as amended by 42 U.S.C. §§ 2000e, et seq. Specifically, Plaintiff contends Defendant treated him differently on the basis of his race in the following instances: (1) by transferring

him from Selma to Montgomery; and (2) by failing to transfer him back to Selma when the Assistant Post Commander Position became available there. (Compl.¶ 19.) The court construes these claims as separate counts of disparate treatment.

At the outset, the court notes that Title VII "forbids discrimination on the basis of sex, race, or national origin in a wide range of employment practices, including hiring, discharge, and promotion." *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994). In disparate treatment discrimination cases, such as the case sub judice, the United States Supreme Court has articulated the appropriate framework under which to determine whether a Title VII plaintiff may survive summary judgment on his or her discrimination claims. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, a Title VII "plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination." *Batey,* 24 F.3d at 1333. Once the plaintiff establishes a prima facie case, the burden of production then shifts to the employer to "articulate some legitimate nondiscriminatory reason" for its alleged discriminatory conduct. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The employer's burden, at this point, is "exceedingly light." *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1142 (11th Cir.1983). Once the employer meets this burden, the "plaintiff must, by either direct or circumstantial evidence, demonstrate by a preponderance of the evidence that the employer had a discriminatory intent." *Batey,* 24 F.3d at 1334. Therefore, using the *McDonnell Douglas* framework set forth above as its guide, the court now seeks to determine whether a genuine issue of material fact exists concerning Plaintiff's claims of disparate treatment against Defendant.

### A. Plaintiff's Transfer From Selma To Montgomery Does Not Constitute Disparate Treatment

Plaintiff first contends that, in November of 1995, he was subjected to disparate

treatment when Defendant transferred him from Selma to Montgomery on the basis of his race. (Pl.'s Resp. at 5–7.) Plaintiff does not dispute the fact that his transfer to Montgomery was a lateral one given that the transfer resulted in no loss of pay, rank, or benefits and given that Defendant provided a state vehicle for Plaintiff to use in his commute from Selma to Montgomery. (Smith Dep. at 103–04.) However, Plaintiff contends that his transfer was equivalent to a demotion because he was "indirectly affected adversely" as a result of the transfer. (Pl.'s Resp. at 6.) Specifically, Plaintiff alleges that his transfer to Montgomery caused him to suffer "great stress" because his longer commute to work resulted in more time away from his minor children. (Pl.'s Resp. at 6.) Further, Plaintiff claims that his transfer to Montgomery "without receiving any type of promotion" caused him to experience embarrassment among his colleagues. (*Id.*)

 The court notes that in cases of alleged disparate treatment involving an employment transfer where no direct evidence of Defendant's discriminatory intent has been shown,[1] the Title VII plaintiff must first show the following elements to establish a prima facie case: (1) that plaintiff is a member of a protected class; (2) that plaintiff was subjected to adverse employment action; (3) that plaintiff's employer treated similarly situated white employees more favorably; and (4) that plaintiff was qualified to do the job from which he or she was transferred. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999). While Plaintiff has clearly established the first and fourth elements of the prima facie case, the court finds that the second and third elements have not been established. Further, the court also finds that Defendant has dem-

onstrated legitimate, nondiscriminatory reasons for its actions, which Plaintiff fails to show as pretext. Therefore, the court finds that Defendant's Motion For Summary Judgment is due to be granted as to this claim.

### 1. Plaintiff Fails To Establish A Prima Facie Case

### (a) No Adverse Employment Action

 The Eleventh Circuit has held that in order to establish a prima facie case, an employee claiming discrimination must "demonstrate that a reasonable person in his [or her] position would view the employment action in question as adverse." *Doe v. Dekalb Co. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir.1998). Moreover, the mere fact that an employee dislikes his or her employer's action is not sufficient to establish the element of adverse employment action required in employment discrimination cases. *See id.* at 1448–49; *see also Perryman v. West*, 949 F.Supp. 815, 819 (M.D.Ala.1996); *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir.1996). Otherwise, every "minor or even trivial employment action" would constitute grounds for a discrimination suit. *Smart*, 89 F.3d at 441. Furthermore, a lateral transfer that results in no loss in pay, benefits, or classification does not generally constitute an adverse employment action. *See Smith v. Upson Co., Ga.*, 859 F.Supp. 1504, 1510 (M.D.Ga., 1994); *see also Maniccia v. Brown*, 171 F.3d 1364, 1370, n. 3 (noting that a lateral transfer, with no loss of pay or benefits, is not considered an adverse employment action). In light of these legal standards, the court now addresses Plaintiff's arguments that the Selma to Montgomery transfer constituted an adverse employment action.

---

1. In Plaintiff's deposition, he was asked if there was any evidence showing Defendant's intent to discriminate against him. Plaintiff responded, "I can't say that I have ... any concrete evidence." (Smith Dep. at 88.) In light of this statement and the lack of any direct evidence of discrimination in Plaintiff's evidentiary submissions, the court will proceed under the standards enunciated in *McDonnell Douglas*, whereby Plaintiff may establish his prima facie case of discrimination through circumstantial evidence. 411 U.S. at 802, 93 S.Ct. 1817.

■ Plaintiff first contends that his longer commute to work creates various emotional problems for him because he is away from his minor children for longer periods of time. (Pl.'s Resp. at 6.) While this may be true, the court notes that Plaintiff certainly had the option to move to Montgomery and thereby avoid the longer commute. (Shoemaker Dep. at 21.) Furthermore, Plaintiff knew that he was subject to state-wide assignment and had, in fact, previously commuted to assignments throughout the state during his tenure with the DPS. (Smith Dep. at 12–18; Def.'s Br. at 4.) In short, the court finds that Plaintiff's longer commute to work was the result of his own decision to continue living in Selma, and that this alone does not constitute an adverse employment action. *See Spring v. Sheboygan Area Sch. Distr.*, 865 F.2d 883, 886 (7th Cir. 1989) (holding that a transfer that increased plaintiff's travel distance to work did not constitute an actionable adverse employment action).

■ Second, Plaintiff contends that the transfer to Montgomery constituted an adverse employment action because, even though he lost no pay or benefits, the fact that he was transferred without a promotion caused him great embarrassment among his colleagues. (Pl.'s Resp. at 6.) The court finds this argument unpersuasive for several reasons. First, Plaintiff was not eligible for promotion at the time of the transfer. (Smith Dep. at 78–79.) Second, mere evidence of a "bruised [ ] ego" does not constitute adverse employment action. *Flaherty v. Gas Research Institute*, 31 F.3d 451, 457 (7th Cir.1994) (holding that a transfer causing plaintiff's title to be changed and resulting in the plaintiff having to report to a former sub- ordinate may have bruised the plaintiff's ego, but did not constitute adverse employment action) (citations omitted). Third, Plaintiff's lateral transfer to Montgomery was arguably a transfer that carried with it a certain amount of prestige because Montgomery is the state headquarters for the DPS.[2] Finally, the court notes that Plaintiff appears to have thrived in his Montgomery position, being promoted to Chief Review Hearing for all hearing officers in the state within four months of becoming eligible for said promotion. (Def.'s Br. at 6; Smith Dep. at 78.) Based on the foregoing, the court rejects Plaintiff's contention that his transfer to Montgomery was an adverse employment action.

While the court sympathizes with Plaintiff's discontent in being laterally transferred from Selma to Montgomery, the court's sympathy does not extend so far as to hold that such a lateral transfer constitutes an adverse employment action. The court recognizes the fact that Plaintiff would prefer to work in Selma rather than Montgomery,[3] but finding adverse employment action based on a mere subjective preference would open wider the floodgates of employment discrimination litigation. Furthermore, if the court were to hold that lateral transfers were tantamount to adverse employment actions anytime an employee was displeased with his or her transfer, "[t]he Equal Employment Opportunity Commission, already staggering under an avalanche of filings too heavy for it to cope with, would be crushed, and serious complaints would be lost among the trivial." *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996).

---

**2.** Major Jerry Shoemaker, former Director of the DPS, states that "[t]o be transferred to headquarters actually enhances a person's ability or possibility of promotion. It just happens that if you're in Montgomery and a position comes available that you're more likely to be promoted or given another assignment or something from Montgomery than you are out in an area elsewhere." (Shoemaker Dep. at 21.)

**3.** The court notes that Plaintiff did not object upon being transferred to Montgomery and, in addition, Plaintiff actually stated that he liked his job in Montgomery, although Plaintiff also stated that he would "like it a whole lot better over in Selma." (Smith Dep. at 37.)

The Eleventh Circuit recently expressed its concern over this very subject when it adopted an objective test to determine whether an adverse employment action has been established. *See Doe v. Dekalb Co. Sch. Dist.*, 145 F.3d 1441 (11th Cir.1998). In essence, the *Doe* court held that in order to establish a prima facie case, an employee claiming discrimination must "demonstrate that a reasonable person in his position would view the employment action in question as adverse." *Id.* at 1449. Although the court in *Doe* was addressing an Americans with Disabilities Act ("ADA") claim, it expressly recognized the importance of an objective test to prove adverse employment action in Title VII cases like the case sub judice. *See id.* at 1451. "Were we to adopt a subjective test [rather than an objective test] for adversity ... we would create an odd situation which a [Title VII] plaintiff could use the *McDonnell Douglas* test not only to avoid having to prove directly his employer's discriminatory intent, but also to force his employer to either disprove the plaintiff's own subjective feelings or concede an element of plaintiff's prima facie case." *Id.* Applying the Eleventh Circuit's rationale to the case sub judice, the court hereby concludes that Plaintiff has not shown his lateral transfer from Selma to Montgomery to be objectively adverse. Therefore, for the reasons articulated above, Plaintiff's prima facie of disparate treatment must fail.

#### (b) No Favorable Treatment Given to Similarly Situated Employees

■ The court finds that Plaintiff also fails to establish a prima facie case because he has presented no evidence that similarly situated white employees were given favorable treatment in the Selma to Montgomery transfer. In fact, Plaintiff readily admits that his white supervisor, Sergeant Spain, was transferred to Montgomery as a result of the same business decision that caused Plaintiff to be transferred to Montgomery. (Smith Dep. at 30.) In *Brown v. American Honda Motor Co.*, the Eleventh Circuit noted that a business decision that affects all races the same is generally not discriminatory. 939 F.2d 946, 952 (11th Cir.1991). Moreover, Plaintiff does not dispute the fact that Captain James Jackson, an African American male, made the recommendation to have Plaintiff transferred to Montgomery because of the departmental needs in Montgomery. (Jackson Aff. at 1; Shoemaker Dep. at 39–40.) The Eleventh Circuit has noted that when a minority manager is involved in an allegedly discriminatory employment decision, the likelihood of intentional discrimination is substantially decreased. *See Moulds v. Wal–Mart Stores*, 935 F.2d 252, 256 (11th Cir.1991). Based on the foregoing, the court finds that Plaintiff fails to satisfy the "favorable treatment" element of his prima facie case. Consequently, Plaintiff's prima facie of disparate treatment must fail.

#### 2. Defendant Provides Legitimate, Nondiscriminatory Reasons For Its Actions, Which Plaintiff Fails To Show As Pretext

■ Even if the court assumes that Plaintiff establishes a prima facie case of disparate treatment regarding the Selma to Montgomery transfer, the court finds that summary judgment would still be proper because Defendant produces substantial evidence demonstrating legitimate, nondiscriminatory business reasons for its decision to transfer Plaintiff to Montgomery. Specifically, Defendant produces evidence that Plaintiff's transfer resulted from a well-documented departmental reorganization aimed at improving the efficiency of the DPS. (Def.'s Exs. 1, 14, 22, & 29; Shoemaker Dep. at 40–41.)

Further, Defendant presents persuasive evidence showing that Plaintiff's skills and talents were greatly needed in Montgomery and that his transfer was a matter of "business necessity." (Def.'s Exs. 15 & 29; Shoemaker Dep. at 28.) This evidence is supported by the fact that Plaintiff was promoted in Montgomery, over nine white applicants, to the position of Chief Review Hearing Officer for all hearing officers in

the state, within four months of becoming eligible for said promotion. (Def.'s Br. at 6; Smith Dep. at 78.) Plaintiff had been groomed for this position since the time of his transfer from Selma to Montgomery. (Smith Dep. at 19–20; Shoemaker Dep. at 28; Def.'s Ex. 22.)

Additionally, Defendant shows that all State Troopers, including Plaintiff, are subject to state-wide assignment and that department policy, under state law, allows Defendant to transfer its employees where there is a "departmental need and/or within the Director's discretion." (Def.'s Br. at 4–5.)

In light of this evidence, the court is satisfied that Defendant's decision to transfer Plaintiff to Montgomery was indeed a valid, nondiscriminatory business decision. Further, the court finds that Plaintiff has produced no evidence demonstrating that these reasons constitute a pretext for discrimination. Based on the foregoing, the court finds that summary judgment is due to be granted as to Plaintiff's disparate treatment claims in regard to the Selma to Montgomery transfer.

### B. Defendant's Decision to Assign Corporal Chapman To Selma Rather than Plaintiff Does Not Constitute Disparate Treatment

Plaintiff asserts that in February of 1996, he was denied a transfer to the Selma position and that this denial constitutes unlawful discrimination because the position was filled by a white State Trooper who was "no more qualified than [P]laintiff for the position."[4] (Pl.'s Resp. at 3.) Because the alleged disparate treatment is in the hiring or promotion context, and because Plaintiff has not produced any direct evidence of Defendant's discriminatory intent,[5] Plaintiff must meet a specific

four-pronged test set forth in *McDonnell Douglas* in order to establish his prima facie case of discrimination through circumstantial evidence. 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see also Arrington v. Cobb County*, 139 F.3d 865, 873 (11th Cir.1998) (stating that to establish a prima facie case of discrimination through circumstantial evidence, former assistant fire chief, in challenging employer's failure to appoint her to newly-created deputy chief position, was required to meet the four-pronged test set forth in *McDonnell Douglas* ); *Merriweather v. Alabama Dep't. of Pub. Safety*, 17 F.Supp.2d 1260, 1267 (M.D.Ala.1998) (stating "[i]n order to establish a prima facie case in the hiring or promotion context" a Title VII Plaintiff must meet the four-pronged test). Under this four-pronged test, Plaintiff must show that: (1) he is a member of a protected group; (2) he applied for and was qualified for the job; (3) his application was rejected; and (4) the position was filled by a person outside the protected class who was equally or less qualified. *See McDonnell*, 411 U.S. at 802, 93 S.Ct. 1817; *Arrington v. Cobb County*, 139 F.3d 865, 873 (11th Cir.1998); *Batey v. Stone*, 24 F.3d 1330, 1334 n. 11 (11th Cir. 1994); *Merriweather v. Alabama Dep't. of Pub. Safety*, 17 F.Supp.2d 1260, 1267–68 (M.D.Ala.1998).

First, the court notes that Plaintiff is a member of a protected group (African Americans), did not receive the position at issue (Selma Assistant Post Commander), and lost the position at issue to a person who was not a member of a protected class (Corporal Terry Chapman). Furthermore, the court notes that Defendant has not asserted that Corporal Chapman was more qualified than Plaintiff for the Assistant Post Commander position.[6] Therefore,

---

**4.** The court notes that the Selma position did not constitute a promotion for Corporal Chapman. (Chapman Dep. at 2.)

**5.** *See supra* note 1.

**6.** Although Defendant argues that Corporal Chapman was well qualified for the Selma Assistant Post Commander Position and that

his selection over Plaintiff was a legitimate management decision, Defendant has not averred that Corporal Chapman was more qualified than Plaintiff for the position. (Def.'s Reply at 5.) Consequently, the court finds that, by construing the evidence in light most favorable to Plaintiff, Corporal Chap-

the court finds that Plaintiff has established a prima facie case for purposes of Summary Judgment.

■ After a prima facie case of discrimination has been established, the *McDonnell Douglas* burden-shifting standards apply as follows:

[O]nce the plaintiff establishes a prima facie case, the burden then shifts to the defendant to rebut the inference of discrimination by presenting a legitimate, nondiscriminatory reason for denying the plaintiff [his transfer]. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Defendant's burden of rebuttal, however, is "exceedingly light"; the burden is " 'merely one of production, not proof.' " *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1142 (11th Cir.1983) (quoting *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 773 (11th Cir.1982)).

*Rollins v. State of Fla. Dep't of Law Enforcement,* 868 F.2d 397, 399 n. 4 (11th Cir.1989). After considering Defendant's arguments and evidentiary submissions, it appears to the court that Defendant has met its "exceedingly light" burden of rebuttal. *Perryman,* 698 F.2d at 1142. Defendant first contends that Plaintiff "was needed as a hearing officer in Montgomery ... and the selection of Corporal Chapman [over Plaintiff] was a management deci-sion." (Def.'s Reply at 5) (citations omitted.) This contention is supported by the fact that upon being transferred to Montgomery, Plaintiff was placed under the training of Sergeant Luther, who retired shortly thereafter.[7] Once Plaintiff became eligible for promotion to Sergeant, he was promoted to fill Sergeant Luther's position.[8] (Shoemaker Dep. at 22.) The court finds that this chain of events supports Defendant's argument that Plaintiff was denied the Selma position not for discriminatory reasons, but rather, because Plaintiff had been transferred to Montgomery to eventually replace Sergeant Luther and thus, Plaintiff was needed in Montgomery more than he was needed in Selma. (Def.'s Reply at 4).

■ Defendant next asserts that Corporal Chapman was well qualified for the Selma position.[9] (*Id.* at 5.) Plaintiff does not dispute this assertion,[10] but rather contends that, due to "his years of experience," Plaintiff was better qualified for the position than Corporal Chapman. (Pl.'s Resp. at 8.) The court notes, however, that "Title VII does not require an employer to hire or promote the most qualified applicant; it only requires that the employer make such decisions without regard to race, sex, religion, color, or national origin." *McCarthney v. Griffin–Spalding County Bd. of Educ.,* 791 F.2d 1549, 1552 (11th Cir.1986). Therefore, even if the court were to assume that Plaintiff was

man was either equally or less qualified for the position than was Plaintiff.

Defendant also argues that Corporal Chapman and Plaintiff were not "similarly situated" and thus, Plaintiff's prima facie case must therefore fail. (Def.'s Br. at 8–10.) In support of this argument, Defendant cites various advantages derived from its decision to transfer Chapman instead of Plaintiff to the Selma position. (*Id.*) While Defendant's argument is well noted and discussed in detail subsequently in this opinion, the court, in construing the evidence in light most favorable to Plaintiff, defers to Plaintiff's assertion that both Chapman and Plaintiff were Corporals at all relevant times and, as such, were similarly situated. (Pl.'s Resp. at 7.)

7. Plaintiff trained under Sergeant Luther for approximately seven months before Sergeant

Luther retired. (Smith Dep. at 19–20.) Furthermore, Defendant knew at the time of Plaintiff's transfer that Sergeant Luther was contemplating retirement. (Shoemaker Dep. at 22; Jackson Aff. at 1.)

8. Plaintiff became eligible for promotion to Sergeant in September of 1997 and received the promotion in January of 1998. (Def.'s Br. at 6; Speight Aff. at 2–3.)

9. The court notes that Corporal Chapman met the qualifications listed for the Selma position. (Pl.'s Exs. B; C.)

10. Plaintiff stated in his deposition that he had no knowledge of Corporal Chapman's qualifications. (Smith Dep. at 112–13.)

more qualified for the position than Corporal Chapman, this fact alone does not refute Defendant's contention that the Selma position was filled without discrimination. *See id.*

Further, Defendant articulates numerous other justifications for its decision to assign Corporal Chapman to Selma in lieu of Plaintiff. Specifically, Defendant asserts that: (1) Plaintiff had no substantive right to the Selma position;[11] (2) Corporal Chapman was the more efficient choice for the Selma position;[12] (3) the law provides Defendant with discretion in filling vacant positions;[13] (4) Plaintiff had a "strained relationship with the Probate Judge" and others in Selma, whereas Corporal Chapman was "unscarred by any prior difficulties in Selma;"[14] and (5) Plaintiff's skills

11. As Plaintiff does not dispute this justification, the court need not further address this issue.

12. As previously discussed, Defendant asserts that Plaintiff was "drastically needed in Montgomery" at the time the Selma position became available. (Def.'s Ex. 29 at 1–2.) Also at this time, Plaintiff had started training under Sergeant Luther, the Chief Review Officer in Montgomery, to become his successor. (Smith Dep. at 19–20.) Plaintiff was considered the "air [sic] apparent to the chief review officer in Montgomery, which is basically a step up." (Shoemaker Dep. at 28.) Furthermore, Plaintiff "was helping to clear a backlog of cases [in Montgomery] which had accumulated prior to his transfer." (Def.'s Ex. 29 at 3.) In short, Defendant contends that there was a greater need for Plaintiff's skills and talents in Montgomery than in Selma.

Defendant further avers that Corporal Chapman's skills and talents were better utilized in Selma than in Montgomery. (Shoemaker Dep. at 28; Def.'s Ex. 15.) Although Chapman had been working as a Corporal in the "[Montgomery] highway patrol division as an assistant post commander" prior to his transfer to Selma, (*Id.* at 26–27), Chapman qualified for the Selma position, and Defendant decided to transfer him based upon his strong credentials. (Shoemaker Dep. at 49–50. & Def.'s Ex. 15.) In addition, Defendant asserts that it was convenient to transfer Chapman to Selma because he could easily commute from his home in Prattville to the Selma Post. (Shoemaker Dep. at 25–28.) Furthermore, Chapman was not required to move to Selma. (Shoemaker Dep. at 28; Chapman Aff. at 1.) In sum, Defendant claims that Chapman was transferred to Selma because of valid business reasons.

Although Plaintiff contends that he should have been assigned to the Selma position instead of Corporal Chapman, the court finds that Defendant has produced considerable evidence showing that its decision to transfer Corporal Chapman to Selma was legitimate and non-discriminatory. It appears that Defendant balanced the need for Plaintiff's skills in Montgomery in relation to the need for Corporal Chapman's skills in Selma. After balancing these factors, Defendant seemingly made a legitimate decision based on "business necessity," as opposed to discrimination. (Def.'s Ex. 29.) Therefore, the court finds persuasive Defendant's argument that Corporal Chapman was the most efficient choice for the Selma Assistant Post Commander Position.

13. Defendant cites Alabama Code § 36–26–23, which applies to State Agencies, including Defendant, and provides the following:

Within the *discretion* of the director, vacancies in positions shall be filled, insofar as practicable, by promotion from among regular employees holding positions in the classified service. Promotion shall be based upon merit and competition.

ALA. CODE § 36–26–23 (1991) (emphasis added). Furthermore, § 36–26–24 of the Alabama Code establishes that Defendant "may, at any time, assign a classified employee, [such as Plaintiff], under [its] jurisdiction from one position to another in the same class." ALA CODE § 36–26–24 (1991). The court takes note of this statutory authority and agrees that Defendant has discretion in making transfers such as the one giving rise to this lawsuit. As Plaintiff has not disputed this proposition, the court deems further discussion unnecessary.

14. Defendant asserts that "[i]t is essential to the efficient operation of the Selma Driver's License Post that [DPS] personnel maintain a cordial and good working relationship with county officials, especially with the Probate Judge who issues driver's licenses." (Def.'s Br. at 5.) Furthermore, Defendant contends that Plaintiff had developed "a poor working relationship with Probate Judge Johnny Jones" and Judge Jones had actually "complained to the department about Plaintiff." (*Id.* at 5 & 9.) Although Plaintiff claims that this justification is merely pretextual, he acknowledges that a problem did exist between himself and Judge Jones. (Smith Dep. at 122–23.) Plaintiff's pretext argument is addressed subsequently in this opinion, but the

and talents were better utilized in Montgomery than in Selma.[15] (Def.'s Br. at 7–10.) After careful consideration of each of these justifications, the court is persuaded that Defendant's decision appears to have been a legitimate one.

Finally, Defendant contends that Plaintiff failed to apply for positions in Selma that became available subsequent to the events giving rise to this lawsuit.[16] (Def.'s Br. at 11; Smith Dep. at 80–99.) Defendant argues that Plaintiff would have had a "preference" on these positions had he applied,[17] but because he failed to apply, "Plaintiff waived any objection to [his] assignment in Montgomery."[18] (Def.'s Br. at 11–12.) Additionally, "Defendant contends that Plaintiff failed to apply for

these positions simply to maintain his lawsuit." (*Id.* at 12.) Plaintiff admits he did not apply for these Selma positions, but contends that he was unaware of the job openings in Selma because at the time the jobs were posted, he was too busy to notice them. (Smith Dep. at 80–99.)

The court notes that it must construe the evidence in light most favorable to the Plaintiff and, therefore, the court concludes that Plaintiff's failure to apply for these openings in Selma was not intended as a ploy to simply maintain his lawsuit. However, it seems rather strange to the court that Plaintiff was not cognizant of these openings given his alleged desire to return to Selma. In any event, the court finds that Plaintiff has not waived his claims by failing to apply for the Selma openings.[19] This evidence, however, cou-

---

court now finds that for purposes of Defendant's present burden, sufficient evidence has been produced to show a problem did exist between Plaintiff and Judge Jones, thus, Defendant's justification appears to be legitimate.

Moreover, Plaintiff admits that he had experienced various problems with his Selma co-workers that contributed to his transfer from Selma to Montgomery. (Smith Dep. 23–29 & 113–16.) While Plaintiff contends that his race was a contributing factor to these problems, he has produced no evidence, other than conclusory assertions, to support this contention. Therefore, the court notes that, although the Parties have not fully addressed this issue, Plaintiff's problems with his Selma co-workers appears to be a valid justification for Defendant's decision to transfer Corporal Chapman, who was "unscarred by any prior difficulties in Selma," rather than Plaintiff. (Def.'s Br. at 10.)

15. Although the court has previously discussed this justification, it bears repeating because Defendant contends that *"the primary reason that Plaintiff remained in Montgomery was because Plaintiff was still needed as a hearing officer in the Montgomery headquarters office."* (Def.'s Br. at 10) (emphasis in original.) In other words, Defendant asserts that the main justification for not transferring Plaintiff to Selma is not because of race or any other improper motive, but rather because Plaintiff's "skills and talents" were better utilized in Montgomery, rather than in Selma. (Def.'s Ex. 29 at 2.) In support of this assertion, Defendant has produced persuasive evidence showing, among other things, that Plaintiff thrived in his Montgomery position

and was promoted to Sergeant in Montgomery within four months of becoming eligible for such a promotion. (Shoemaker Dep. at 22.) On the other hand, Corporal Chapman was not promoted while serving as the Selma Assistant Post Commander and he was eventually transferred back to the Montgomery Post. (Def.'s Br. at 10 & Chapman Aff. at 2.) The court finds that this evidence supports Defendant's argument that race played no part in its decision to transfer Corporal Chapman to Selma instead of Plaintiff.

16. The court notes that the openings in Selma consisted of two separate Sergeant positions posted in October–November of 1998. (Smith Dep. at 80–99.) "This was at a time when Plaintiff had already been appointed Sergeant in Montgomery in January, 1998 *and had filed his lawsuit in March, 1998.*" (Def.'s Br. at 11 (emphasis in original).)

17. "Pursuant to Policy Order 100, Plaintiff would have had a preference as an officer holding the identical rank to try to claim either of these Sergeant positions. The preference would have been over any other lower ranking officer who applied to be promoted." (Def.'s Br. at 12.)

18. Defendant offers no authority to support its contention that Plaintiff has waived his claims by not applying for the Selma openings. Therefore, the court finds that, in viewing the evidence in light most favorable to Plaintiff, Plaintiff's claims have not been waived.

19. *See supra* note 18.

pled with the fact that Plaintiff has been successfully promoted in his Montgomery position,[20] further persuades the court that the Defendant's decision to retain Plaintiff in Montgomery was indeed legitimate.

Based on the foregoing, the court finds that Defendant has met its "exceedingly light" burden of rebuttal. *Perryman*, 698 F.2d at 1142 (11th Cir.1983). Defendant produces a significant amount of evidence showing that its decision to transfer Corporal Chapman to Selma in lieu of Plaintiff was a legitimate, non-discriminatory business decision. Accordingly, the court finds that Defendant has successfully rebutted Plaintiff's prima facie case of discrimination.

Because the court finds that Defendant has met its burden, any "presumption of discrimination disappears from the case and Plaintiff must [now produce evidence that would] persuade the trier of fact that the employer's proffered reasons were pretextual and that the real reason for the adverse employment decision was, in fact, discriminatory." *Harris v. Delchamps, Inc.*, 5 F.Supp.2d 1316, 1321 (M.D.Ala. 1998) (citing *Texas Dep't. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "[P]laintiff has the opportunity to come forward with evidence including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997) (citations omitted). "This may be accomplished by 'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Harris*, 5 F.Supp.2d at 1321 (quoting *Combs*, 106 F.3d at 1528). In order for Plaintiff's claims to "survive summary judgment ... [P]laintiff must come forward with evidence sufficient 'to permit a

reasonable fact finder to conclude that the employer's proffered non-discriminatory reasons were not what actually motivated its conduct.'" *Id.*

Plaintiff offers the following arguments to prove that Defendant's justifications for its decision to transfer Corporal Chapman to Selma instead of Plaintiff were pretextual: (1) that the Selma position was reopened just five weeks after Plaintiff's transfer to Montgomery; (2) that Plaintiff was more qualified than Corporal Chapman for the Selma position because Plaintiff had worked there for many years; (3) that Plaintiff was the logical choice for the Selma position because he lived in Selma, as opposed to Corporal Chapman, who lived in Prattville; (4) that Plaintiff was not promoted in Montgomery for almost two years after his transfer; and (5) that Plaintiff's problems with Judge Jones did not constitute a valid justification for Defendant's decision. (Pl.'s Resp. at 5–11.)

■ Before analyzing Plaintiff's pretext arguments, we note that "the court's responsibility [is] not to second guess the wisdom of [Defendant's] reasoning, but to determine if the reasons given were merely a cover for discriminatory intent." *Brown v. American Honda Motor Co.*, 939 F.2d 946, 951 (11th Cir.1991). The court further notes that "Title VII does not require that the employer's decision be rational or that an employer hire or promote the most qualified applicant, nor does it even guarantee success for those having greater merit. Title VII only requires that the employer make such decisions without regard to race, sex, religion, color, or national origin." *Harris*, 5 F.Supp.2d at 1332 (citing *Gilchrist v. Bolger*, 733 F.2d 1551, 1553 (11th Cir.1984)); *Garcia v. Gloor*, 618 F.2d 264, 269 (5th Cir.1980). With these standards in mind, the court now addresses Plaintiff's arguments.

First, Plaintiff contends the fact that Defendant reopened the Selma position just five weeks after it had dissolved the

**20.** *See supra* notes 7–8 and accompanying text.

same position undermines Defendant's justifications for its decision not to transfer Plaintiff back to Selma. (Pl.'s Resp. at 8.) Plaintiff is apparently alleging that Defendant surreptitiously devised a scheme whereby it would first dissolve the Selma position, then subsequently re-establish said position all in an effort to deprive Plaintiff of his job. However, the court finds that Plaintiff has produced no evidence, outside of this conclusory assertion, that would support such an allegation.

On the other hand, Defendant produces a significant amount of evidence showing that the dissolution and subsequent re-establishment of the Selma position resulted from a legitimate departmental reorganization. (Def.'s Exs. 1,14, 22, & 29; Shoemaker Dep. at 40–41.) As discussed previously, Plaintiff's transfer from Selma to Montgomery was the result of a written committee recommendation aimed at improving departmental efficiency. (Def.'s Br. at 4.) Plaintiff, along with his white supervisor, Sergeant Spain, was transferred to Montgomery when the Selma Post was merged into the Montgomery Post, thus, dissolving the Selma supervisory positions. (Shoemaker Dep. at 40–41.) This lateral transfer did not cause Plaintiff to suffer any loss of compensation or rank and, in fact, it arguably constituted a promotion for Plaintiff because Montgomery is where the DPS is headquartered.[21] (*Id.* at 20.) Furthermore, Plaintiff did not object upon being transferred to Montgomery and has actually stated that he likes his Montgomery position, but would prefer working in Selma. (Smith Dep. at 37.) In light of this evidence, the court finds no hint of discriminatory motive in Defendant's decision to dissolve the Selma position.

Additionally, the court is persuaded by Defendant's evidence showing that the re-establishment of the Selma position subsequent to Plaintiff's transfer to Montgomery was also the result of a legitimate, non-discriminatory decision. Defendant readily admits that the Selma "position was re-established after the department realized that one supervisor was still needed for a while in Selma." (Def.'s Reply at 4.) Further, Defendant does not dispute that the Selma position was reopened "some weeks later"[22] after the position had been dissolved as part of the departmental reorganization. (*Id.*) However, Defendant does dispute Plaintiff's assertion that discrimination was a factor in the re-establishment of the Selma position. (*Id.*) Defendant asserts, and submits supporting evidence, that it simply made a management decision to place a supervisory officer back in the Selma Post because there was a business need for such an officer. (*Id.*) Based on the evidence before the court, it appears that the needed position in Selma was posted in accordance with departmental rules and was subsequently filled in accordance with departmental needs. (Shoemaker Dep. at 48–49; Pl.'s Ex. C; Def.'s Ex. 15.)

Plaintiff's rebuttal to Defendant's justifications regarding the dissolution and re-establishment of the Selma position consists of nothing more than conclusory allegations of discrimination. (Pl.'s Resp. at 8.) The court finds no trace of discrimination in Defendant's decisions regarding the Selma position and notes that the evidence shows these decisions were the result of a well-documented departmental reorganization. "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [Defendant] has offered such extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Ferron v. West,* 10 F.Supp.2d 1363, 1371 (M.D.Ga.1998) (citing *Grigsby v.*

---

**21.** *See supra* note 2.

**22.** The court notes that Plaintiff's position in Selma was effectively dissolved on November 1, 1995. (Def.'s Ex. 1.) Additionally, the court notes that this same position was re-established and proper notice for applications was posted on December 27, 1995. (Pl.'s Ex. 3.) Accordingly, eight weeks expired between the dissolution and re-establishment of the Selma Assistant Post Commander Position.

*Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir.1987)); *see also Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985) (conclusory allegations of discrimination are insufficient to raise inference of pretext and thereby defeat a summary judgment motion). Accordingly, the court finds that Plaintiff has failed to establish by a preponderance of the evidence that a discriminatory intent motivated Defendant's decision to dissolve and later re-establish the Selma position.

Second, Plaintiff avers that he was more qualified for the Selma position because of his "years of experience". (Pl.'s Resp. at 8.) However, the court notes, once again, that "Title VII does not require an employer to hire or promote the most qualified applicant; it only requires that the employer make such decisions without regard to race, sex, religion, color, or national origin." *McCarthney,* 791 F.2d at 1552. Therefore, even if the court were to assume that Plaintiff was more qualified for the position than Corporal Chapman, this fact alone does not refute Defendant's contention that the Selma position was filled without discrimination. *See id.*

Third, Plaintiff asserts that he was the logical choice for the Selma position because he lived in Selma, as opposed to Corporal Chapman, who had to commute to Selma from his home in Prattville. (Pl.'s Resp. at 8.) While Plaintiff's assertion appears to be somewhat plausible, the court again notes that "the court's responsibility [is] not to second guess the wisdom of [Defendant's] reasoning ...." *Brown,* 939 F.2d at 951. Defendant's reasoning consists of equally plausible arguments justifying its decision to transfer Chapman to Selma in lieu of Plaintiff. *See supra* notes 1225–1227 and accompanying text. Primarily, Defendant has produced evidence showing that there was a greater need for Plaintiff's skills and talents in Montgomery than in Selma. *See supra,* notes 1226 & 1227. Plaintiff does not dispute this justification. Nor does Plaintiff dispute the fact that, as a State Trooper, he is "subject to statewide assignment where there is a departmental need and/or

within the Director's discretion." (Def.'s Br. at 4–5 (citations omitted).)

Furthermore, the court notes that both Plaintiff and Corporal Chapman had been assigned to various locations across the state during their respective tenures with the DPS, and both had commuted to their assignments at some point in time before the events giving rise to this lawsuit occurred. (Smith Dep. at 12–18; Chapman Aff. at 1–2.) Thus, in light of the foregoing, the court concludes that Defendant's decision to transfer Chapman instead of Plaintiff does not appear to be quite as irrational as Plaintiff would have the court believe. In any event, "Title VII does not require that the employer's decision be rational ... [but only] that the employer make such decisions without regard to race, sex, religion, color, or national origin." *Harris,* 5 F.Supp.2d at 1332 (citing *Gilchrist v. Bolger,* 733 F.2d 1551, 1553 (11th Cir.1984)); *Garcia v. Gloor,* 618 F.2d 264, 269 (5th Cir.1980). Consequently, the court finds that Defendant's decision was apparently justified and not racially motivated.

Fourth, Plaintiff alleges that he was not promoted in Montgomery for almost two years after his transfer and that this fact illustrates the racial motive behind Defendant's decision. (Pl.'s Resp. at 8.) However, Plaintiff fails to address the facts that he was not eligible for promotion until nearly two years after his transfer and that, upon passing the Sergeant's test and thereby becoming eligible for promotion, he was quickly promoted to Sergeant over nine white applicants eligible for the same position. (Def.'s Br. at 6; Smith Dep. at 78.) Furthermore, Plaintiff is currently the Chief Review Hearing Officer for all hearing officers in the state, which is the position that Plaintiff had been groomed for since his transfer to Montgomery. (Shoemaker Dep. at 22.) Based on the foregoing, the court finds no merit in Plaintiff's argument.

Fifth, Plaintiff argues that the "ill" relationship he had with Probate Judge Jones

did not constitute a valid justification for Defendant's decision to choose Corporal Chapman over Plaintiff for the Selma position. (Pl.'s Resp. at 9–11.) Although Plaintiff acknowledges having had a problem with Judge Jones, he contends that the conflict between the two occurred many years before Plaintiff was transferred to Montgomery. (*Id.* at 11.) Furthermore, Plaintiff maintains that Defendant has failed to sufficiently articulate the disaccord between Judge Jones and Plaintiff. (*Id.* at 10–11.) Specifically, Plaintiff points out that Defendant did not mention the problem with Judge Jones in its August 5, 1996 letter to the EEOC and that, when deposed, one of the officers involved in Plaintiff's transfer to Montgomery, Major Jerry Shoemaker, did not recall the specifics of the conflict between Judge Jones and Plaintiff. (*Id.*) In short, Plaintiff avers that this justification is merely pretextual. (*Id.* at 9.)

However, Plaintiff does not dispute the fact that it is important for Defendant's driver's license employees to maintain a good working relationship with probate judges because the probate judge is the county official who issues driver's licenses. (Shoemaker Dep. at 52.) Nor does Plaintiff dispute the fact that Corporal Chapman entered the Selma position with no prior history of bad working relationships with probate judges or fellow DPS co-workers. Additionally, Plaintiff does not contest the fact that he did have a history of bad working relationships with Probate Judge Jones and certain DPS co-workers. (Smith Dep. at 122–23; 23–29; 113–16.) The bottom line is that Plaintiff does not take issue with the undisputed, nondiscriminatory justifications set forth above; rather, Plaintiff simply disagrees with the manner in which the Defendant has set forth these justifications for its decision. The court finds no merit in Plaintiff's assertion of pretext and further finds that Plaintiff's relationship problems in Selma were legitimate, nondiscriminatory reasons for Defendant's decision to transfer Chapman to Selma instead of Plaintiff.

In sum, the court concludes that Plaintiff has not met its burden of proving that Defendant's justifications for its decision to transfer Corporal Chapman to Selma instead of Plaintiff were pretextual. Plaintiff has produced nothing more than conclusory allegations of discrimination to rebut Defendant's extensive evidence of legitimate, nondiscriminatory reasons for its decisions regarding the Selma position. The court, once again, notes that conclusory allegations, such as these, are not sufficient to raise an inference of pretext or intentional discrimination. *See Ferron v. West,* 10 F.Supp.2d 1363, 1370 (M.D.Ga. 1998) (citing *Grigsby v. Reynolds Metals Co.,* 821 f.2d 590, 597 (11th Cir.198)); *see also Meiri v. Dacon,* 759 F.2d 989, 998 (2nd Cir.1985) (conclusory allegations of discrimination are insufficient to raise inference of pretext and thereby defeat a summary judgment motion). Accordingly, the court finds that Defendant's Motion For Summary Judgment is due to be granted on Plaintiff's claim of disparate treatment in regard to the hiring of Corporal Chapman rather than Plaintiff for the Selma position.

## II. Retaliation

Plaintiff alleges that Defendant retaliated against him "for his complaints of mistreating [sic] and requests for grievance because of his race in violation of Title VII." (Compl.¶ 17.) Specifically, Plaintiff contends that Defendant directly reprimanded him and then gave him low ratings on his job evaluations in retaliation for his filing of an EEOC complaint in 1996. (Pl.'s Resp. at 11–15.) For the reasons stated herein, the court finds that Defendant's Motion For Summary Judgment is due to be granted on Plaintiff's claim of retaliation.

To establish a prima facie case of retaliation under Title VII, Plaintiff must show the following: (1) that Plaintiff engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) that Plaintiff was disadvan-

taged by an action of Defendant either simultaneously or subsequent to such opposition or participation; and (3) that there is a causal connection between the protected activity and Defendant's actions. *See Morgan v. City of Jasper,* 959 F.2d 1542, 1547 (11th Cir.1992); *Whatley v. Metropolitan Atlanta Rapid Transit Authority,* 632 F.2d 1325, 1328 (5th Cir. 1980).[23] "Once the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. (citation omitted) If this burden is satisfied, the plaintiff must then show that the employer's proffered reason is a pretext for retaliation." *Merriweather v. Alabama Dep't of Pub. Safety,* 17 F.Supp.2d 1260, 1267 (M.D.Ala.1998). The court finds that Plaintiff's retaliation claims are due to be dismissed because Plaintiff fails to establish a prima facie case.

### A. "Direct Reprimand"

■ Plaintiff first alleges that he was "directly reprimanded for filing an EEOC complaint in 1996." (Pl.'s Resp. at 13.) However, the court finds no merit in this allegation because Plaintiff only cites to one reprimand issued by Defendant on March 11, 1996, and Plaintiff did not file his complaint with the EEOC until June 3, 1996. (Pl.'s Ex. G; Def.'s Ex. 27; Smith Dep. at 133.) Therefore, as the alleged reprimand occurred prior to the protected activity, the court finds that Plaintiff has obviously failed to show a causal link between the filing of his EEOC complaint and the reprimand. *See Maniccia,* 171 F.3d at 1369.

Despite Plaintiff's failure to prove retaliation in regard to the EEOC complaint, the court, in viewing the evidence in light most favorable to Plaintiff, further addresses the issue of whether Defendant's reprimand was retaliatory. *See Adickes,* 398 U.S. at 157, 90 S.Ct. 1598 (1970). The court notes that prior to filing his EEOC complaint, Plaintiff had filed an employee departmental grievance alleging racial discrimination. (Compl. at 3.) The March 11, 1996 reprimand was in response to this departmental grievance and not the formal EEOC complaint filed in June of 1996. (Pl.'s Ex. G.) In Plaintiff's departmental grievance, he claimed that "[t]here are other collateral matters relative to this incident that I will address in the near future." (Pl.'s Ex. G.) However, when Plaintiff's supervisors inquired about Plaintiff's grievance and these "other collateral matters," Plaintiff refused to disclose any further information. (*Id.*) Even when Plaintiff's direct supervisor, Captain Howell, ordered Plaintiff to "provide information on the 'other collateral matters' so a full and complete investigation could be undertaken[,]" Plaintiff still refused to cooperate. (*Id.*) After these incidents had taken place, Colonel Mitchell, director of DPS, reprimanded Plaintiff for failing to obey a lawful order by a superior officer. (*Id.*) Although Plaintiff does not dispute the fact that the reprimand was issued "for instituting a grievance, yet at the same time, willfully withholding essential information," Plaintiff apparently contends that Defendant's motive in issuing the reprimand was retaliatory.[24] (Pl.'s Resp. at 13–14.)

■ The court initially notes that informal grievances filed pursuant to an "employers' internal grievance procedures," such as the departmental grievance filed by Plaintiff, are considered protected activities under Title VII. *Rollins,*

---

**23.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)(en banc).

**24.** The court notes that Plaintiff has not clearly articulated this argument in his submissions to the court. Furthermore, Plaintiff did not even mention the reprimand in his initial EEOC complaint or his amended EEOC complaint. (Def.'s Exs. 27 & 28.) Therefore, while the court attempts to give Plaintiff the benefit of the doubt, it is very difficult to find merit in Plaintiff's claim of retaliation with regard to the reprimand.

868 F.2d at 400. However, "where an employee resists an employer's attempts to investigate discriminatory activity, '[the employee] cannot claim her informal complaints amounted to an activity protected by federal law.'" *Dupont–Lauren v. Schneider (USA), Inc.,* 994 F.Supp. 802, 822 (S.D.Tex.1998) (quoting *Bray v. Tenax Corp.,* 905 F.Supp. 324, 328 (E.D.N.C. 1995)). Furthermore, the Eleventh Circuit has held that:

> "to qualify for the protection of the statute, the manner in which an employee expresses [his] opposition to an allegedly discriminatory employment practice must be reasonable. This determination of reasonableness is made on a case by case basis by balancing the purpose of the statute and the need to protect individuals asserting their rights thereunder against an employer's legitimate demands for loyalty, cooperation, and a generally productive work environment." *Rollins,* 868 F.2d at 401. "If, under this balancing test, the manner in which the employee complains is found to be unreasonable, it falls outside the protection of the statute[.]"

*Id.* Applying the law set forth above to the facts of the present case, the court determines that Plaintiff's failure to cooperate with Defendant in its attempt to investigate Plaintiff's departmental grievance effectively removed said grievance from the protection of Title VII. First, the court notes that the grievance was issued because Plaintiff had refused to follow a direct order from his supervisor, Captain Howell. (Pl.'s Ex. G.) The court finds nothing retaliatory in the mere fact that an employer reprimands an employee for failure to follow a direct order from his or her supervisor. Such an action is sometimes necessary to maintain an effective workplace and is particularly important in Defendant's industry because "[o]rder and morale are critical to successful police work: a police department [or Department of Public Safety] is 'a paramilitary organization, with a need to secure discipline, mutual respect, trust and particular efficiency among the ranks due to its status as

a quasi-military entity different from other public employers.'" *Hansen v. Soldenwagner,* 19 F.3d 573, 577 (11th Cir.1994) (quoting *Bryson v. City of Waycross,* 1988 WL 428478 (S.D.Ga.1988), aff'd, 888 F.2d 1562 (11th Cir.1989)); *see also, Hughes v. Whitmer,* 714 F.2d 1407, 1419 (8th Cir. 1983) ("More so than the typical government employer, the [highway patrol] has a significant government interest in regulating the speech activities of its officers in order 'to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence in the law enforcement institution.'" (citations omitted)); *Kelley v. Johnson,* 425 U.S. 238, 246, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) (noting "need for discipline, esprit de corps, and uniformity" in police departments); *Connick v. Myers,* 461 U.S. 138, 151–52, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) ("When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate."). In light of Defendant's role as a quasi-military law enforcement agency, the court is hesitant to second guess Defendant's decision to reprimand Plaintiff for violating a direct order.

Second, the court notes that the March 11, 1996 reprimand was clearly issued to Plaintiff for "willfully withholding essential information" regarding his grievance and not simply for filing the grievance itself. (Pl.'s Ex. G.) The court further notes that the manner in which Plaintiff handled his departmental grievance was unreasonable because Plaintiff failed to cooperate with the investigation of the matters alleged in said grievance. (Pl.'s Ex. G.) Again, the court points out that "where an employee resists an employer's attempts to investigate discriminatory activity, '[the employee] cannot claim [his or] her informal complaints amounted to an activity protected by federal law.'" *Dupont–Lauren,* 994 F.Supp. at 822 (quoting *Bray v. Tenax Corp.,* 905 F.Supp. 324, 328 (E.D.N.C. 1995)). This, coupled with the fact that Defendant made repeated efforts to re-

solve Plaintiff's grievance only to have Plaintiff refuse to cooperate, leads the court to conclude that Plaintiff's grievance did not constitute a protected activity. *See Rollins,* 868 F.2d at 401. Therefore, the court finds that Plaintiff has failed to establish a prima facie case of discrimination regarding the "direct reprimand."

### B. "Meets Standards" Job Evaluations

■ Plaintiff next avers that Defendant gave him low ratings on his job evaluations in retaliation for his filing of an EEOC complaint in 1996. (Pl.'s Resp. at 11–15.) Plaintiff's evidentiary submissions show that he received his first "meets standards" evaluation in 1997 and later received similar evaluations in 1998 and 1999. (*Id.*) Prior to 1997, Plaintiff had consistently received "exceeds standards" evaluations from his supervisors. (*Id.*) Plaintiff claims that this evidence "[c]learly ... shows that the [Defendant] retaliated against the plaintiff for filing his claim with the EEOC." (*Id.* at 15.) However, Plaintiff readily admits the fact that he was promoted in 1998, despite his "lower evaluations." (Smith Dep. at 78.) Additionally, other than the conclusory allegation that "[t]hese low evaluations *could have* precluded [P]laintiff from receiving a promotion ...," Plaintiff has produced no evidence that these "meets standards" evaluations have adversely affected him. (Pl.'s Resp. at 13 (emphasis added).) As the court noted earlier, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-

movant's burden." *Douglass v. United Serv. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996). In any event, the undisputed facts show that Plaintiff did receive a promotion in the midst of these "lower evaluations," and therefore, the court finds Plaintiff's conclusory allegation to be unwarranted.

■ Furthermore, it is well settled that "lower employee evaluation scores which still meet the employer's expectations for employee performance and are not used as the basis for any employment detriment are not 'adverse employment action' within the meaning of that element of a plaintiff's prima facie case of Title VII retaliation." *Merriweather v. Alabama Dep't of Pub. Safety,* 17 F.Supp.2d 1260, 1274 (M.D.Ala.1998); *see also Malone v. K–Mart Corp.,* 51 F.Supp.2d 1287, 1307–08 (M.D. Ala.1999) (holding that an employee evaluation that did not fall below the "meets expectations" range does not constitute a negative performance evaluation); *Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 896 (10th Cir.1994) (holding that satisfactory, but diminished evaluations do not constitute adverse employment actions giving rise to actionable retaliation claims). Thus, applying this strong line of precedent to the facts of the instant case, the court finds that Plaintiff's "meet standards" evaluations do not constitute adverse employment action and therefore, his prima facie case of retaliation must fail.[25]

---

**25.** Even if the court were to assume that Plaintiff had established a prima facie case of retaliation, summary judgment would still be proper as to this claim because Defendant has produced abundant evidence showing nondiscriminatory reasons for the "meets standards" evaluations. (Def.'s Br. at 15; Def.'s Reply at 6–7; Howell Aff. at 3.) Specifically, Defendant has submitted evidence showing that during the time period when Plaintiff received the "meet standards" evaluations, Plaintiff was adapting to his new, challenging job requirements and that it would be unreasonable to expect "exceeds standards" evaluations during such a transition period. (Def.'s

Br. at 15.) Additionally, Defendant's evidence reveals that the supervisor who evaluated Plaintiff in 1997 was not even aware that Plaintiff had filed an EEOC complaint. (Howell Aff. at 3; Smith Dep. at 58.) Moreover, Plaintiff has not produced sufficient evidence to show that these well documented evaluations were pretextual. Therefore, the court finds that it is unnecessary to go into further detail regarding this matter, and the court further finds that Defendant has articulated sufficient, nondiscriminatory reasons for evaluating Plaintiff at "meet standards" and that these reasons would defeat Plaintiff's allegation of retaliation.

### III. Pattern and Practice

In his Complaint, Plaintiff alleges that "Defendant [had] engaged in a pattern [and] practice of limiting and classifying Plaintiff and other black employees in ways that deprive them of equal employment opportunities, and otherwise affecting their status as employees because of race." (Compl.¶ 21.) Plaintiff has subsequently admitted, however, that he "does not have the evidence necessary to substantiate [this claim] . . . ." (Pl.'s Supp. Resp. at 1.) Therefore, the court finds that Plaintiff's claim of pattern and practice is due to be dismissed.

### IV. Plaintiff's Claims of Wantonness and Willfulness and Attorneys' Fees

Plaintiff claims that Defendant's wanton and wilful conduct entitle him to punitive damages. (Compl. ¶ 23; Pl. Suppl. Resp. at 1–2.) Plaintiff also seeks attorneys' fees. (Compl.¶ 24.) However, because the court finds that Plaintiff's underlying discrimination claims are due to be dismissed, Plaintiff's ancillary claims for punitive damages and attorneys' fees must also fail. *See Dudley v. Wal–Mart Stores,* 166 F.3d 1317, 1322 (11th Cir.1999).

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendant's Motion For Summary Judgment be and the same is hereby GRANTED. It is further CONSIDERED and ORDERED that all of Plaintiff's claims against Defendant be and the same are hereby DISMISSED.