**Shenavia MOULDS, Plaintiff–Appellant,**

**v.**

**WAL–MART STORES, INC.;  Bert Dewailly, Defendants–Appellees.**

**No. 90–7614.**

United States Court of Appeals, Eleventh Circuit.

July 11, 1991.

---

Ronnie L. Williams, Mobile, Ala., for plaintiff-appellant.

Barry V. Frederick, Powell, Tally & Frederick, Birmingham, Ala., for defendants-appellees.

Before KRAVITCH and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

Plaintiff/appellant Shenavia Moulds appeals from a judgment in favor of defendants/appellees Wal–Mart Stores, Inc. and Bert Dewailly (hereinafter collectively referred to as "Wal–Mart"), finding no unlawful discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., in Wal–Mart's failure to promote Moulds to the position of receiving department manager. Because we do not find the factual findings of the district court to be clearly erroneous, we affirm.

I.

Shenavia Moulds, a black female, was hired by Wal–Mart in October, 1986, as a receiving department clerk in the Mobile, Alabama store. The receiving department is the largest department at the store and has the largest number of employees assigned to it.

At the time Moulds was hired, Linda Bolger, a white female, was receiving manager. When Bolger left, she was replaced by a white female named Janice, whose last name does not appear in the record. Moulds claims that Janice had been the assistant manager under Bolger. She concedes that there is no such formal position as assistant receiving manager but contends that someone customarily was selected by the manager to serve in that capacity. She claims that Phyllis Carter, another white female, served as assistant under Janice and was promoted to manager when Janice left. Moulds served as assistant manager under Carter, she claims, and acted as the manager in Carter's absence.

Sometime prior to April, 1988, Phyllis Carter resigned and the job of receiving department manager became available. No formal application procedure existed at Wal–Mart. Employees who were interested in promotion were informally identified by store managers who then made a selection among the qualified interested candidates at a meeting of the store's management committee. Steve Eubanks, the former assistant store manager responsible for overseeing the receiving department in April, 1988, was aware of plaintiff's interest in promotion. Eubanks told plaintiff he would propose her for the job of receiving manager.[1] Store Manager and defendant

---

1. Plaintiff claims that Eubanks assured her that she would be chosen to fill the vacant position, a claim that Eubanks denies. Eubanks also denies telling Moulds, before the selection was made, that she would need to be more of a "bitch" to be manager. Sandra McCampbell,

Bert Dewailly, a white male, approached receiving department employees Bill Humenansky and Vincent Burgess, both white males, and Sandra Edwards, a black female, to determine their interest in the job. Only Humenansky was interested in the promotion. He was ultimately selected to be the new receiving department manager.

Bill Humenansky had been hired by Wal–Mart in July 1987, initially as a janitor. He later transferred to the receiving department where he handled the larger merchandise. Store management committee members who testified at trial stated that his performance at Wal–Mart had been "excellent" and "super," and they particularly praised his initiative, aggressiveness, helpfulness and consistency. Humenansky had served in the Coast Guard from 1959 to 1974. He had been a chief petty officer, had eleven years of supervisory experience, and had supervised the staff of three Coast Guard districts, the Coast Guard Academy and a Coast Guard Group Office. He had later supervised a maintenance crew that worked a chain of grocery stores.

Both Moulds and Humenansky were considered, along with several other candidates, by the committee of store managers which eventually made the selection. Members of the management committee who participated in the promotion decision were store manager Dewailly, and assistant store managers Eubanks, Doris Turner, Mike Ramanauskas, Brenda Haynes, Robert Browning and Lee Thompson. Dewailly, Eubanks and Turner testified at trial. It was undisputed that Humenansky was the unanimous choice to be the next receiving manager.

Moulds filed this action against Wal–Mart in June 1989, alleging unlawful racial and sexual discrimination under Title VII and under 42 U.S.C. § 1981. Her § 1981 claim was dismissed prior to trial. After trial, the district court entered judgment for Wal–Mart, supported by findings of fact and conclusions of law.

## II.

At trial, Moulds relied on circumstantial evidence to create an inference of discriminatory intent in order to make out her prima facie case of unlawful racial discrimination.[2] *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Smith v. Horner,* 839 F.2d 1530, 1536 (11th Cir. 1988). It is not seriously contested by Wal–Mart that plaintiff has proved a prima facie case of racial discrimination. Once a plaintiff has met that initial burden, the burden of production shifts to the defendant, who must articulate some legitimate nondiscriminatory reason for the employment decision adverse to the plaintiff. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. To succeed on her claim, plaintiff must then prove by a preponderance of the evidence that defendant's proffered reason(s) are mere pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825. The ultimate burden of persuading the court that the defendant employer intentionally discriminated against the plaintiff remains, at all times, upon the plaintiff. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

The district court found that Moulds failed to prove by a preponderance

---

one of plaintiff's co-workers, testified that she overheard that statement.

**2.** According to plaintiff's brief on appeal, she appears to be contesting not only the lower court's finding as to racial discrimination but also the district court's finding that her charge of sex discrimination was "totally unfounded." Yet she cites no evidence for this allegation and she cannot. The evidence showed that the position had previously been held by three females. Sandra Edwards, a black female, was one of those approached in an effort to solicit interest in the vacant position. Two of the seven deci-

sionmakers who chose Humenansky over plaintiff were female. Wal–Mart presented evidence that significant numbers of females were promoted by the same management committee. *See infra* note 4.

This evidence, relied on by the court below, was uncontradicted by plaintiff and she presented neither direct evidence of sexual discrimination nor any evidence tending even remotely to create an inference of such discrimination. Therefore, only her allegations of racial discrimination will be discussed below.

of the evidence that Wal–Mart's reasons for not promoting her to receiving manager were pretextual and that the decision was the result of intentional racial discrimination. Because the existence of intentional discrimination is a question of fact, the district court's finding is subject to the clearly erroneous standard of review. *Pullman–Standard v. Swint,* 456 U.S. 273, 289–90, 102 S.Ct. 1781, 1790–91, 72 L.Ed.2d 66 (1982); *Fowler v. Blue Bell, Inc.,* 737 F.2d 1007, 1013 (11th Cir.1984). This Court may reverse a district court's factual finding only if there is no substantial evidence in the record to support it and if, after reviewing the record as a whole, this Court is left with the definite impression that a mistake has been made. *Fowler,* 737 F.2d at 1013.

■ The district court found that Wal–Mart offered two legitimate nondiscriminatory reasons for promoting Humenansky instead of plaintiff to the position of receiving manager: 1) the management committee was impressed both by his greater supervisory experience, particularly in the Coast Guard, as well as his excellent performance at Wal–Mart; and 2) they believed that plaintiff lacked a sufficiently strong personality to be an effective manager in a department where she had so many friends who would be working under her authority.

Plaintiff argues that these reasons are a mere pretext for discrimination. The strongest evidence offered by plaintiff in support of her allegations was that she was the person chosen by the former receiving manager to exercise authority in the manager's absence, and that the informally chosen assistant had been the employee selected to become the new manager upon the departure of each of the previous two receiving managers. When plaintiff's manager decided to leave, however, store manager Dewailly approached Humenansky to inquire if he were interested in the promotion. He did not approach Moulds. All previous receiving managers had been white.

In further support of her claims, plaintiff offered evidence that, at the meeting of the management committee where the selection was made, Humenansky's personnel file was reviewed by committee members, while hers was not. Moulds asserts that she had prior supervisory experience, had received satisfactory evaluations at Wal–Mart, and had more seniority than Humenansky. Humenansky's significant supervisory experience was in the Coast Guard, approximately fifteen years prior to his Wal–Mart employment. His later employment history plaintiff characterizes as unstable, because he had changed jobs several times in the two years prior to his employment with Wal–Mart. Finally, plaintiff testified that Humenansky had not been familiar with all of the receiving manager's duties and that she had to assist or train him after his promotion.

The evidence that plaintiff relies on was undisputed by Wal–Mart, but it was not the whole of the evidence. Wal–Mart showed at trial that the "assistant manager" that Moulds claimed to be was an unofficial designation adopted by plaintiff to describe her role in covering some supervisory duties during her manager's periodic absences and that plaintiff was not the only employee to do so. Wal–Mart did not dispute that plaintiff had been one of the employees expected to provide direction for other receiving department employees or that her performance in that regard had been satisfactory.

Assistant store manager Eubanks solicited plaintiff's interest in promotion, as Dewailly solicited Humenansky's, and presented her for consideration at the management committee meeting. Another black female, Sandra Edwards, was asked by Dewailly if she were interested in promotion, but she was not.

Dewailly, Eubanks and Doris Turner, also an assistant store manager and a black female, all testified that the standard practice in promotion decisions was for store managers to determine who was interested in promotion, and then to meet and discuss the candidates before making a de-

cision.[3] They each stated that this procedure had been followed when selecting the new receiving manager and that Humenansky had been the unanimous choice for promotion because of his supervisory experience as well as his excellent work performance at Wal–Mart. Further, Dewailly testified as to other black employees who had been promoted by the committee. Out of a total of fourteen department manager positions, six blacks had been promoted to that level, four before Humenansky's promotion.[4] Out of four customer service managers, at all times at least two had been black.

In contrast to Humenansky's job performance, plaintiff's performance had been evaluated as "satisfactory" or "average," and plaintiff testified that she did not think her evaluations had been discriminatory. In fact, plaintiff testified that she did not believe the assistant store managers discriminated against her. Yet, Steve Eubanks, who proposed plaintiff for consideration at the meeting, confirmed at trial that he preferred Humenansky over Moulds. Doris Turner also testified that she preferred Humenansky. Dewailly testified that Humenansky's personnel file was reviewed only because the committee had not been as familiar with his prior work experience as it was with that of other candidates for promotion. The committee was aware that plaintiff had been a supervisor over a small group of sales clerks at another retail store and they did not consider that equivalent to Humenansky's experience in the Coast Guard, or to supervising a larger group of employees in receiving. Finally, concerns about plaintiff's ability to adequately exercise authority in that department were discussed at the meeting. Assistant store manager Mike Ramanauskas felt that plaintiff belonged to a "clique" of employees in receiving and that it could pose trouble for her as a manager.

Plaintiff argues that, because that assessment of her personality or leadership ability was subjective, it cannot be accepted as a legitimate nondiscriminatory reason for her nonselection or that it must be seen as pretextual. Although "subjective evaluations involving white supervisors provide a ready mechanism for racial discrimination," *Miles v. M.N.C. Corp.*, 750 F.2d 867, 871 (11th Cir.1985), in this case we do not have only subjective criteria nor do we have only white supervisors involved in decisionmaking. Dewailly, Eubanks and Turner all testified that Humenansky's greater experience and superior work performance were the primary reasons he was selected over plaintiff.

In *Smith v. Horner*, 839 F.2d 1530, 1539 (11th Cir.1988), the employer failed to promote a qualified employee on the grounds that her personality and ability to deal with higher-level officials were seen by her supervisor as inferior to those skills of another employee. This Court held that it was not clearly erroneous for the district court to accept this subjective assessment as nonpretextual where it was not contradicted by any evidence at trial.

"As the factfinder, the district court must ultimately 'decide which party's explanation of the employer's motivation it believes.'" *Hill v. Seaboard Coast Line R. Co.*, 885 F.2d 804, 811 (11th Cir.1989) (quoting *United States Postal Servs. v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). The testimony of Dewailly, Eubanks and Turner was internally consistent and not contradicted by any evidence of record. Where "the district court accepts an employer's testimony that it chose the person it thought best qualified for the job, that finding ordinarily will not be overturned on appeal." *Smith*, 839 F.2d at 1539.

This review of the record as a whole reveals substantial evidence to support the district court's finding that there was no

---

**3.** Turner testified that this procedure was followed when the prior receiving managers were selected, contrary to plaintiff's assertion that the earlier promotions were automatic and that only in her case was a committee involved.

**4.** Three of the four blacks promoted prior to Humenansky were female. Of the six blacks promoted to department manager, five were female. There was no evidence presented as to white females promoted.

unlawful discrimination in defendant's failure to promote plaintiff to the position of receiving department manager.

### III.

Wal–Mart seeks an award of attorney's fees on appeal. Under *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), this Court in its discretion may award fees to a prevailing defendant where the plaintiff's appeal was frivolous, unreasonable or groundless. We do not find that plaintiff's appeal in this case was so without foundation that an award of attorney's fees is warranted.

The judgment of the district court is AFFIRMED.