[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11220

_____

D. C. Docket No. 06-01438-CV-RWS-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 30, 2009
THOMAS K. KAHN
CLERK

DONELLE KEATON,

Plaintiff-Appellant,

versus

COBB COUNTY, GA,
MICHELE MARCHANT-WELLMAN,
individually and officially,
SHONELL SFREDDO,
individually and officially,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 30, 2009)

Before WILSON and COX, Circuit Judges, and FAWSETT,[*] District Judge.

_____

[*] Honorable Patricia C. Fawsett, United States District Court for the Middle District of Florida, sitting by designation.

PER CURIAM:

Donelle M. Keaton, an African-American female, appeals the grant of summary judgment to Cobb County, Georgia, Cobb County Director for the Juvenile Court Michele Marchant-Wellmon, and Cobb County Clerk for the Juvenile Court Shonell Sfreddo (collectively "appellees"), in an action brought pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to e-17.

Keaton raises several issues on appeal with respect to appellees' decision to deny her the Judicial Administrative Supervisor ("supervisor") position for which she applied and was interviewed. First, Keaton argues that the district court erred by finding that factual issues did not exist regarding appellees' asserted legitimate non-discriminatory reason of "greater experience." Keaton argues in this regard that Cobb County policy required disqualification of the selected candidate and that she demonstrated pretext for appellees' proffered "greater experience" reason based upon their post hoc actions and their false and inaccurate justifications. Second, Keaton argues that the court erred by finding that appellees met their burden of production with a "reasonably specific" explanation for the promotion decision. Third, Keaton contends that the court erred by granting appellees' motion for summary judgment because it relied upon Crawford v. City of Fairburn, Ga., 482 F.3d 1305 (11th Cir.), cert. denied, 128 S. Ct. 495 (2007), and Combs v.

Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997), which Keaton asserts

are contrary to Supreme Court precedent as set forth in Reeves v. Sanderson

Plumbing Prods., 530 U.S. 133, 120 S. Ct. 2097 (2000).  Fourth, Keaton argues

that the court erred by finding that appellees were entitled to summary judgment

despite Keaton's assertion that the court should conduct a "mixed motive" analysis.

Finally, Keaton contends that the court erred by granting the individual appellees

summary judgment on her § 1983 claims.  For the reasons set forth more fully

below, we affirm.

## I.  BACKGROUND

In approximately March of 2005, Cobb County advertised job openings in

the Juvenile Court for the positions of Clerk of Juvenile Court ("clerk") and

supervisor.[1]   The written job announcements for both positions specified that a

four-year degree was "preferred."  Keaton applied for both positions.  Even though

she possessed a four-year degree, Keaton was not selected for either position.

Sfreddo and Marchant-Wellman interviewed Keaton for the supervisor

position.  During the interview, Keaton was asked whether clerks at the court

should be able to work a four-day work week.  Sfreddo remembered Keaton

indicating that a four-day work week would be acceptable.  Sfreddo did not agree

---

[1]  Keaton does not challenge the district court's decision to grant summary judgment to
appellees on Keaton's claims relating to appellees' decision to select Ms. Sfreddo for the clerk
position.

3

with this suggestion. Marchant-Wellman wrote in her interview notes, "4 day work week won't work for Clerks"; however, there is no testimony in the record explaining whether this meant that Keaton advocated or rejected a four-day work week. Keaton contended that she never advocated a four-day work week during the interview.

Within approximately two hours of the interview on a Friday, Sfreddo told Keaton that she was not being selected because Keaton "was not going in the direction [Sfreddo] wanted to go." Janice Walker, a white female, was selected instead. Unlike Keaton, Walker did not possess a four-year degree from a college or university. In addition, Walker marked on her application that she had a high school diploma and a paralegal degree when, in fact, she had a GED and a paralegal "certificate." Cobb County hiring policies require disqualification of applicants who make false representations on the application. However, Cobb County Director of Human Resources Anthony Hagler testified that the county's policy does not necessarily require that a candidate be disqualified because of discrepancies like those on Walker's job application.

Keaton immediately complained about being passed over for the promotion. Three days later on Monday, Sfreddo directed an employee, Tammy Yancey, to create a selection memorandum for the supervisor position. Sfreddo indicated that the memorandum was prepared according to regular procedure. The memorandum

indicated that Walker had ten years of experience in the legal/court setting and five years of experience in the Juvenile Court. The letter also highlighted four types of supervisory experience that Walker had: (1) serving as a "back-up supervisor"; (2) supervising two employees in the Probate Court; (3) supervising trainees; and (4) supervising a crew of Cobb County inmates who transported records to various departments. Yancey stated that she created the document based on Walker's application, resume, and paralegal certificate, a letter from a judge who stated that Walker held a supervisor position, and a conversation Yancey had with Sfreddo. During her deposition, Walker testified that she had not served as a backup supervisor and that her supervision of the two employees in Probate Court was during their training. However, Walker also stated that she had supervised trainees during the entire time she was a deputy clerk and that she was the only person providing this training.

Keaton alleged in her counseled complaint[2] that appellees engaged in intentional and unlawful race discrimination by denying Keaton both promotions.[3] After discovery, appellees filed a motion for summary judgment. In their

---

[2] The complaint was filed against Marchant-Wellman and Sfreddo in both their individual and official capacities.

[3] The Equal Employment Opportunity Commission concluded that it was more likely than not that Keaton had been discriminated against in the denial of the supervisor position based upon her race.

supporting brief, appellees proffered the following reasons for not selecting Keaton for the supervisor position: (1) Walker had more experience in the Cobb County Juvenile Court than Keaton; (2) Walker had supervisory experience that Keaton lacked; and (3) Keaton's interview responses. Keaton filed a response in opposition to appellees' motion for summary judgment.

The magistrate judge issued a report and recommendation ("R&R") that recommended granting summary judgment to appellees with respect to the clerk position but denying summary judgment as to Keaton's claims concerning the decision to promote Walker to the supervisor position. The magistrate also determined that Sfreddo and Marchant-Wellman were not entitled to qualified immunity. Specifically, the magistrate concluded that Keaton had cast doubt on two of the three reasons given by appellees for selecting Walker for the supervisor position: (1) Keaton's interview responses; and (2) Walker's greater supervisory experience. However, even though Keaton had not "offered any evidence to undermine the veracity of [appellees'] reason that Walker had better experience," the magistrate determined that an exception was warranted to the rule set forth in Chapman v. AI Transportation, 229 F.3d 1012, 1037 n.30 (11th Cir. 2000) (en banc), which requires a plaintiff to present sufficient evidence to show that each of the employer's proffered reasons are pretextual.

Both parties objected to the magistrate's R&R. In a footnote in her response

6

to appellees' objections to the R&R, Keaton asserted that "[e]ven if [the court] were to accept [appellees'] assertion [about not rebutting each of the proffered reasons], Keaton is still entitled to the denial of summary judgment based upon the 'mixed motive' theory."

The district court adopted all of the magistrate judge's findings of fact, and it agreed with the magistrate's conclusions of law that recommended granting summary judgment to appellees with respect to the clerk position. However, relying on Crawford and Chapman, the court determined that Keaton was:

> required to rebut each of the legitimate, nondiscriminatory reasons proffered by [appellees] to survive summary judgment. '[Keaton] has not offered any evidence to undermine the veracity of [appellees'] reason that Walker had better experience.' (R&R at 80.) Therefore, [appellees] are entitled to summary judgment on [Keaton's] claims relating to the failure to promote [Keaton] to the [supervisor] position.

The district court granted appellees' motion for summary judgment as to all claims.

## II. DISCUSSION

We review a grant of summary judgment de novo and view the evidence in the light most favorable to the nonmoving party. Crawford, 482 F.3d at 1308. "Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (internal quotation marks omitted)

(quoting Fed. R. Civ. P. 56(c)).

"In cases where direct evidence of employment discrimination is lacking, we analyze the claim under the McDonnell Douglas[ Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)] framework, which requires the plaintiff to create an inference of discrimination through [her] prima facie case." Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1347 (11th Cir. 2007). In this case, Keaton did not present direct evidence of discrimination and instead proceeded in accordance with the McDonnell Douglas analysis.

The parties do not dispute that Keaton was able to make out a prima facie case of racial discrimination based upon the failure to promote.[4] Thus, the burden shifted to appellees to articulate a non-discriminatory basis for their employment action. Id. at 1347. Once the employer meets this burden, the plaintiff must show that the proffered reasons were pretextual. Id. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id.

"In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's

---

[4] To establish a prima facie case on the basis of a failure to promote, a plaintiff may demonstrate that: (1) she belonged to a protected class; (2) she was qualified for and applied for a position; (3) despite her qualifications, she was rejected; and (4) the position was filled with someone outside the protected class. Springer, 509 F.3d at 1348 n.2.

proffered nondiscriminatory reasons is pretextual." Chapman, 229 F.3d at 1037 (emphasis added); see also Crawford, 482 F.3d at 1308. In other words, "[a] plaintiff in a discrimination case based on circumstantial evidence can avoid judgment as a matter of law by putting on a prima facie case and by producing evidence sufficient to discredit in the mind of a reasonable juror all of the defendant's proffered nondiscriminatory reasons for its actions." Combs, 106 F.3d at 1543 (emphasis added). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."[5] Chapman, 229 F.3d at 1030.

We discuss each of Keaton's arguments in turn.

## A.

Keaton first argues that the district court erred in finding that she had failed to produce evidence rebutting appellees' proffered nondiscriminatory reason for selecting Walker for the supervisor position based on Walker's greater experience.

Specifically, Keaton argues that she rebutted this proffered reason by producing evidence: (1) that Walker should not have been considered for the

---

[5] In a footnote in Chapman, we left open the question whether an exception exists to the "well-established rule that a plaintiff must show pretext as to each proffered reason." Chapman, 229 F.3d at 1037 n.30. We determined that the factual basis for such an exception did not exist in Chapman. Id.

position under Cobb County hiring policies because Walker gave a false response concerning whether she had a high school diploma and a paralegal "degree"; (2) that appellees manufactured post hoc justifications for selecting Walker in a selection memorandum that was created after Keaton had complained; (3) that appellees falsely asserted that Walker had greater "supervisory experience"; (4) that appellees ignored the preferred criteria of a four-year college degree; and (5) that appellees dishonestly claimed that Keaton's interview responses were problematic. None of these arguments are persuasive.

As a general matter, "[h]iring a less qualified person can support an inference of discriminatory motivation." Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1107 (11th Cir. 2001), recognized as abrogated on other grounds, Crawford v. Carrol, 529 F.3d 961, 971-74 (11th Cir. 2008). But "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer." Chapman, 229 F.3d at 1030 (emphasizing that "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. . . . [r]ather our inquiry is limited to whether the employer gave an honest explanation of its behavior." (internal quotation marks omitted)); see also Alexander v. Fulton County, Ga., 207 F.3d 1303, 1341 (11th Cir. 2000) (stating that "it is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not racially

motivated").

When challenging a promotion decision, "a plaintiff cannot prove pretext by simply arguing or even by showing that [she] was better qualified than the person who received the position [she] coveted. A plaintiff must show not merely that the employment decisions were mistaken but that they were in fact motivated by race." Springer, 509 F.3d at 1349 (brackets, quotation marks, and citation omitted). "Furthermore, a plaintiff must show that the disparities between the successful applicant's and [her] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Id. (citations and quotation marks omitted) (holding, in light of the selected candidate's undisputed qualifications, that Springer's possession of a four-year degree, which was a preferred qualification for the job opening she applied for, was insufficient by itself to conclude that the employer's proffered reason for promoting the other candidate who did not possess a four-year degree was pretext).

Keaton's pretext arguments on appeal can be characterized in two ways, neither of which satisfies the requirement of rebutting appellees' proffered nondiscriminatory reason of promoting Walker based on her greater experience in the Juvenile Court. First, all five arguments can be characterized as reasons why Walker should not have been promoted in lieu of Keaton. To the extent Keaton

11

takes this approach, her arguments are facially inadequate because she does not meet appellee's "greater experience" argument "head on." Keaton must address the fact that Walker had at least one additional year of experience in the Cobb County Juvenile Court; she cannot simply quarrel with the wisdom of appellees' decision by pointing to five other reasons why Walker did not deserve the promotion. Chapman, 229 F.3d at 1030.

Alternatively, Keaton's arguments regarding Walker's alleged misrepresentation and appellees' post hoc justifications for hiring Walker could be characterized as challenges to the veracity of the "greater experience" proffered reason. In essence, Keaton is claiming that she can demonstrate that the "greater experience" reason is a ruse for discrimination because there is evidence in the record that appellees hired Walker, despite false representations in her application, and then manufactured reasons to support their actions.

However, this approach also runs afoul of the "head on" rule, because Keaton's arguments do not relate to the proffered reason at issue: that Walker's experience was greater. In *Bass*, we held that an employer's deviation from standard procedure in totaling selection criteria scores and relying exclusively upon interviews, in addition to other evidence suggesting a race-conscious decision-making process, cast doubt on the employer's proffered nondiscriminatory reason that the applicant performed poorly in an interview.

12

*Bass*, 256 F.3d at 1109. By contrast, the alleged procedural deviation in this case does not bear on whether appellees actually promoted Walker based on her greater experience. The alleged misrepresentations in Walker's application concerned her educational background, a criteria that is not proffered as a reason for her selection.[6] Furthermore, the inaccuracies in the selection memorandum address Walker's greater "supervisory experience," not Walker's general experience as an employee at the Cobb County Juvenile Court. Appellees identify these two types of experience as separate and distinct reasons for Walker's selection. Thus, even if Keaton's arguments were sufficient to establish the existence of pretext, they would not do so with respect to the proffered reason at issue on appeal, whether Walker had greater experience in the Cobb County Juvenile Court. See Chapman,

---

[6] We further note that Keaton's argument regarding the falsity of Walker's application is not supported by the record. Keaton failed to present evidence that appellees actually disregarded Cobb County hiring procedures. Initially, Walker marked on her application that she had a high school diploma and a paralegal degree when, in fact, she had a GED and a paralegal "certificate." Walker stated during her deposition that she wrote "paralegal" in the degree section of the application because she thought there was no such thing as a paralegal degree and it would therefore be obvious that she only had a certificate. Keaton equates these responses to "false representations," and she further argues that Walker knew the responses were false because she had correctly filled out an application in the past. However, Cobb County Director of Human Resources Anthony Hagler testified that the county's policy does not necessarily require that a candidate be disqualified because of minor discrepancies like those on Walker's job application. Keaton does not challenge this testimony. Thus, unlike Bass, the record does not reflect a deviation from hiring procedures. C.f. Bass, 256 F.3d at 1108. Furthermore, we have previously explained that "[t]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." Springer, 509 F.3d at 1350 (emphasis in original) (quoting Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir. 1995)). Any deviation from procedure that occurred in this case was minimal and does not support an inference of pretext.

13

229 F.3d at 1030 ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it . . . .").

B.

Keaton next argues that appellees failed to meet their burden of responding to her prima facie case. As previously mentioned, "if the plaintiff succeeds in proving the prima facie case, the burden of production shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Burdine, 450 U.S. at 252-53, 101 S. Ct. at 1093 (quoting McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824). As the Supreme Court has explained:

> The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

Burdine, 450 U.S. at 254-55, 101 S. Ct. at 1094-95 (internal citations and footnotes

14

omitted).

Here, although appellees failed to identify evidence to support the proffered reason of Walker's "greater experience," appellees made clear in their motion for summary judgment that Walker's "greater experience" was comprised of her ten years of experience in the legal/court setting and five years of experience with the Juvenile Court, which was consistent with Walker's application. In contrast to Walker's qualifications, appellees noted that Keaton had a college degree but only three and one half years' experience in the Juvenile Court. Keaton's application and resume were also contained in the record. Thus, appellees satisfied their burden of production because they clearly described Walker's experience in their motion and the record contained supporting evidence. See Burdine, 450 U.S. at 254-55, 101 S. Ct. at 1094-95. Moreover, the district court correctly accepted appellees' reason as legitimate and nondiscriminatory because "greater experience" is an established reason for selecting a different candidate. See Springer, 509 F.3d at 1347-48 (more qualified candidate due, in part, to "significant experience"); see also Cofield v. Goldkist, Inc., 267 F.3d 1264, 1267-68 (11th Cir. 2001) (more qualified candidate); Moulds v. Wal-Mart Stores, Inc., 935 F.2d 252, 255-56 (11th Cir. 1991) (greater supervisory experience).

C.

In the event that we reject her first two arguments, Keaton argues that we

15

should apply the exception advocated by the dissent in <u>Chapman</u>. She also argues that we should disregard <u>Crawford</u> and <u>Combs</u> to the extent these decisions require plaintiffs to rebut an employer's proffered reason "head on" because the requirement is contrary to the Supreme Court's decisions in <u>Reeves</u> and <u>Hicks</u>. We disagree with both suggestions.

The Supreme Court stated in <u>Reeves</u> that "a <u>prima facie</u> case and sufficient evidence to reject the employer's explanation may permit a finding of liability," and, therefore, a plaintiff need not always be required to introduce additional, independent evidence of discrimination. <u>Reeves</u>, 530 U.S. at 148-49, 120 S. Ct. at 2109. "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." <u>Id.</u> at 147, 120 S. Ct. at 2108. "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." <u>Id.</u> at 147-48, 120 S. Ct. at 2108-09. However, such a showing by a plaintiff may not always be adequate to sustain a finding of liability because "[c]ertainly there will be instances where, although the plaintiff has established a <u>prima facie</u> case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." <u>Id.</u> at 148, 120 S. Ct. at 2109; <u>see also</u> <u>Hicks</u>, 509 U.S.

16

at 511, 113 S. Ct. at 2749 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

We discussed Reeves and Hicks in Chapman. See Chapman, 229 F.3d at 1024-26. After discussing these cases and the relevant case law from our circuit, we maintained that a plaintiff was required to produce sufficient evidence to rebut each of an employer's proffered legitimate, nondiscriminatory reasons. Id. at 1037; see also Springer, 509 F.3d at 1347 (citing Reeves). Specifically, the "employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman, 229 F.3d at 1037. A panel of this Court applied the rule in less direct terms several years earlier in Combs, 106 F.3d at 1543 (finding that evidence of the selected candidate's past financial impropriety could not rebut the employer's proffered reason of superior supervisory experience), and the rule has since been applied in Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088, 1092 (11th Cir. 2004) (citing Chapman and finding that a decision-maker's statement that "women aren't typically in that type of position," accompanied by the decision-maker's concession that the passed over applicant was the "most qualified," could rebut the proffered reason that the selected candidate was better qualified"), Crawford, 482

17

F.3d at 1309 (finding that certain statements by a decision-maker "suggest[ed] a retaliatory animus[] but [did] not respond to the explanation of the City that Crawford's performance was unsatisfactory in four other areas of his responsibility"), and Springer, 509 F.3d at 1350 (concluding that (1) the plaintiff's possession of a four-year degree, which was a preferred criteria for the position, and (2) a decision-maker's violation of the employer's internal procedures for hiring that was unrelated to the employer's proffered reason of better experience did not constitute sufficient evidence of pretext). Nevertheless, Keaton argues that the requirement of meeting a proffered reason "head on" is inconsistent with the Supreme Court's decisions in Reeves and Hicks to the extent the rule prevents a plaintiff from indirectly demonstrating pretext by attacking the employer's general credibility.

Keaton's argument seizes on concerns articulated by the dissent in Chapman. The dissent maintained that an exception to the "head on" rule should exist in cases where the plaintiff rebuts some of an employer's proffered reasons in a manner that raises sufficient doubt as to the veracity of the employer's other proffered reasons that the plaintiff failed to directly rebut. Chapman, 229 F.3d at 1049-50 ("[C]ommon sense also counsels that there are some situations where the failure of one proffered reason may affect the reliability of other proffered reasons."). The majority, neither endorsing nor rejecting the exception, found that

18

the facts of the case did not raise questions about the employer's credence. Id. at 1037 n.30. Similarly, we conclude that there are no such doubts in this case, and we therefore are not presented with the question of whether an exception to the rule in Chapman should be applied. Even if lack of credence might demonstrate pretext in some cases, Keaton has not shown that the proffered "greater experience" reason is unworthy of credence in this case. See Reeves, 530 U.S. at 147-48, 120 S. Ct. at 2108-09; Hicks, 509 U.S. at 531-32, 113 S. Ct. at 2760.

The district court adopted the magistrate's findings that Keaton rebutted two of appellees' proffered nondiscriminatory reasons: (1) that Walker had greater supervisory experience; and (2) that Keaton gave unsatisfactory responses during her interview. Specifically, the magistrate found that Keaton had created an issue of material fact as to whether "Sfreddo and Marchant-Wellman gave an honest explanation concerning Plaintiff's statements about the flexible schedule." The magistrate came to this conclusion because Keaton, in a declaration, denied making such a statement. Further, Marchant-Wellman's interview notes stated that a "4 day work week won't work for Clerks," which the magistrate found to be evidence that Keaton did not advocate a four-day work week during the interview.[7] The magistrate also found there to be a dispute between Keaton's recollection and the

_____

[7] The Magistrate made this assumption without any testimony from Marchant-Wellman as to what her note meant.

19

recollection of Marchant-Wellman and Sfreddo concerning whether Keaton said during the interview that she preferred to work alone. Regarding Walker's supervisory experience, the magistrate found that the selection memorandum drafted by Sfreddo was inaccurate because Walker testified during her deposition that she did not have the extent of supervisory experience identified in the memorandum. As a result, the magistrate also concluded that there was an issue of fact regarding appellees' proffered reason of selecting Walker due to her greater supervisory experience.

The district court adopted the magistrate's finding of pretext with regard to these proffered reasons, and the district court's conclusions are not challenged on appeal. Nevertheless, we are not persuaded that Keaton rebutted these two proffered reasons in a manner sufficient to cast doubt on the credibility of appellees' separate proffered reason of hiring Walker due to her greater experience in the Juvenile Court.

Regarding Walker's supervisory experience, Keaton is correct that Sfreddo directed Yancey to produce a selection memorandum on the Monday following the announcement of the promotion decision on Friday. However, Keaton exaggerates the degree to which the memorandum was inaccurate. Walker testified during her deposition that she did have some supervisory experience. She also stated during her deposition that she agreed with a letter from a judge who stated that Walker

20

previously held a supervisor position. On the other hand, Walker did, at one point in the deposition, testify that Sfreddo should have clarified in the memorandum that Walker supervised two employees while they were in training. Walker also stated during the deposition that she did not serve as a "backup supervisor," contrary to what is stated in the selection memorandum.

We are not presented with the issue of whether these inaccuracies raised a genuine issue of material fact concerning appellees' proffered reason of selecting Sfreddo due to her greater supervisory experience. However, even assuming that they did, we do not believe that the selection memorandum's inaccuracies could have served as sufficient evidence to challenge the credibility of appellees' assertion that they hired Walker due to her greater experience in the Juvenile Court.

Put differently, even assuming that the exception to Chapman exists, we do not think that impeachment over minor inaccuracies regarding one proffered reason can persuade a reasonable juror to find for the employee on a separate, un-rebutted reason. This conclusion is consistent with decisions of other circuits where the exception advocated by the Chapman dissent is recognized. See Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 332 (3d Cir. 2000) ("[W]ithout evidence of pretext relevant to the justifications for not hiring Narin for these positions, no rational trier of fact could find them unworthy of credence."); Smith v. Chrysler

21

<u>Corp.</u>, 155 F.3d 799, 809 (6th Cir. 1998) ("The doubt raised over Chrysler's second alternative justification for firing Smith does not translate into an inference that the true motivation behind Smith's discharge was his disability. The two justifications and the sources from which they were derived were separate in nature . . . ."); <u>Russell v. Acme-Evans Co.</u>, 51 F.3d 64, 70 (7th Cir. 1995) ("In the face of Acme-Evans' uncontested grounds for transferring Russell, and with no evidence that Acme-Evans' true motivation was racial, no reasonable jury could infer from doubt over whether Russell's 'wandering' played a real rather than pretextual role in the transfer that the true motivation for the transfer was indeed his race.").

We come to the same conclusion regarding appellees' proffered reason of not selecting Keaton due to her interview responses. Again, we express no opinion as to whether Marchant-Wellman's notes and the inconsistencies between Keaton's testimony and Sfreddo's testimony created an issue of material fact with regard to the proffered reason of Keaton's unsatisfactory interview responses. However, even if they did, this evidence would not be sufficient to persuade a reasonable juror to find against the veracity of a proffered reason that had nothing to do with the interview.

Thus, consistent with Reeves and Hicks, Keaton has not produced evidence sufficient to discredit in the mind of a reasonable juror each of appellees' proffered legitimate, nondiscriminatory reasons for its promotion decision. See Reeves, 530

22

U.S. at 147-48, 120 S. Ct. at 2108-09; Hicks, 509 U.S. at 531-32, 113 S. Ct. at 2760; Chapman, 229 F.3d at 1037; Crawford, 482 F.3d at 1308. Like the majority in Chapman, we do not believe that an exception to the requirement that an employee must rebut each of the employer's proffered reasons "head on" is implicated by the facts of this case. For this reason, we decline to address the issue of whether the rule articulated in Crawford, Chapman, and Combs is consistent with Reeves and Hicks.[8]

### D.

Keaton next argues that the district court erred by failing to address her "mixed motive" argument. However, Keaton has waived this argument because she effectively raises it for the first time on appeal.[9] Narey v. Dean, 32 F.3d 1521, 1526-28 (11th Cir. 1994). Our case law regarding waiver suggests that Keaton's single, passing reference to a "mixed motive" theory in a footnote contained in her response to appellees' objections to the magistrate's R&R was not sufficient to preserve the issue for appeal. See Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987) (stating that a single footnote in an

[8] The Chapman majority discussed both Reeves and Hicks. Chapman, 229 F.3d at 1024-26. Because these cases have not been overruled by the Supreme Court or this Court sitting en banc, we are bound to follow them. E.g., United States v. Valladares, 544 F.3d 1257, 1265 (11th Cir. 2008).

[9] Although we recognize five exceptions to the rule that "appellate courts generally will not consider an issue or theory that was not raised in the district court," none of those exceptions are implicated by this case. See Narey, 32 F.3d at 1526-27.

initial brief did not sufficiently preserve an issue that was argued in reply brief);

see also United States v. Jernigan, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003)

(holding issue abandoned where, although the defendant made passing references

to an issue in brief, the references were undertaken as background to claims that he

expressly advanced).  More importantly, Keaton did not raise the "mixed motive"

issue in her original complaint, and her footnote was sufficient neither to provide

appellees with adequate notice of the new claim nor to amend the original

complaint.  See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314-15 (11th

Cir. 2004) (holding insufficient Gilmour's attempt to raise a new claim in response

to the employer's summary judgment motion and noting that the proper procedure

to assert a new claim would have been to seek to amend the complaint).

E.

Finally, Keaton argues that the district court erred in dismissing the claims

against Marchant-Wellman and Sfreddo.  "Although McDonnell Douglas was a

Title VII case, Title VII and section 1983 claims have the same elements where the

claims are based on the same set of facts."  Rioux v. City of Atlanta, Ga., 520 F.3d

1269, 1275 n.5 (11th Cir. 2008).  The district court did not err by granting

appellees' motion for summary judgment on Keaton's § 1983 claims because

Keaton failed to rebut appellees' proffered legitimate, nondiscriminatory reason

that Walker had "greater experience."  See supra Part III.A-C.  Therefore,

24

Marchant-Wellman and Sfreddo were entitled to summary judgment on this issue. See Fed. R. Civ. P. 56(c); Rioux, 520 F.3d at 1275 n.5.

## III.  CONCLUSION

For the foregoing reasons, the district court's judgment is

**AFFIRMED**.